# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

CHARLES FRANCIS PULLEY, III,

        Petitioner,      :      Case No. 3:25-cv-00144

  - vs -                    District Judge Walter H. Rice
                              Magistrate Judge Michael R. Merz

WARDEN,
 Madison Correctional Institution,

                         :
        Respondent.

---

## REPORT AND RECOMMENDATIONS

---

This habeas corpus case was brought *pro se* by Petitioner Charles Francis Pulley, III, to obtain relief from his convictions in the Montgomery County, Ohio, Court of Common Pleas for murder, felonious assault, involuntary manslaughter, and endangering children. (Verdict, State Court Record, ECF No. 7, Exhibit 20).

**Should the Stay of Proceedings be Extended?**

After Respondent filed the State Court Record and Return of Writ (ECF No. 7), Petitioner's Reply was due on October 5, 2025 (See Order for Answer, ECF No. 4).  However, on October 7, 2025, District Judge Rice sustained Petitioner's Motion to Stay and extend the time to file a Reply pending the outcome of state court litigation on Petitioner's motion for a new trial.

1

On February 5, 2026, the Magistrate Judge reference in the case was transferred to the undersigned (ECF No. 13).  At the time of transfer, there were two pending motions to extend the stay, both of which were unsigned although signature of all filings is required by Fed.R.Civ.P. 11. Because Judge Rice had written no opinion on the stay when it was initially granted, the undersigned believed it should, before it was extended, be analyzed under *Rhines v. Weber*, 544 U.S. 269 (2005), which is the source of district courts' authority to stay habeas cases pending state court litigation.  To that end the undersigned entered an Order to Show Cause, extending Petitioner's Reply date to March 2, 2026, and requiring him to show cause by that date why the stay should be further extended.

Petitioner has not responded, either by showing cause for a stay or by filing a reply.  His initial Motion for Stay merely indicated he had filed a motion for leave to file a delayed motion for new trial, but did not attach a copy of that motion.  Review of the docket of the Common Pleas Court shows Judge E. Gerald Parker denied the motion on January 10, 2026, and Petitioner has appealed.

In recognizing a district court's authority to stay a habeas case, the Supreme Court wrote in *Rhines*:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"). . . .

2

> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.

*Id.* at 277-278.

At this point in time, Petitioner has not shown any entitlement to a further stay, which is hereby DENIED.

**The Case is Ripe for Decision of the Statute of Limitations Defense**

In the absence of a stay, the case is ripe for decision of Respondent's limitations defense on the Petition, the State Court Record and the Return of Writ.

**Litigation History**

On February 4, 2021, the Montgomery County Grand Jury indicted Pulley on one count of murder as a proximate result of felonious assault, in violation of Ohio Revised Code § 2903.11(A)(1)/2903.02(B), one count of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1), one count of murder  as a proximate result of endangering children in violation of Ohio Revised Code § 2919.22(B)(1)/2903.02(B), one count of endangering children in violation of Ohio Revised Code § 2919.22(B)(1), one count of involuntary manslaughter as the proximate result of endangering children in violation of Ohio Revised Code § 2903.04(A)), and one count of endangering children (parent – serious harm) in violation of Ohio Revised Code § 2919.22(A),

3

(Count Six). (Indictment, State Court Record 7, Ex. 1).  At a jury trial at which Pulley represented himself, a jury found him guilty on all counts (Verdict, State Court Record, ECF No. 7, Ex. 20). The trial court sentenced Pulley to imprisonment for eighteen years to life. *Id.* at Ex. 21.

Pulley appealed through counsel to the Ohio Second District Court of Appeals which affirmed.  *State v. Pulley*, 2023-Ohio-3277 (Ohio App. 2nd Dist. Sept. 15, 2023).  The Ohio Supreme Court denied leave to file a delayed appeal and declined to provide further review.  *State v. Pulley*, 173 Ohio St.3d 1475 (April 30, 2024).  Pulley deposited his Petition in the prison mail system on April 28, 2025, effectively filing it here.  *Houston v. Lack*, 487 U.S. 266 (1988).  He pleads the following nine grounds for relief:

> **Ground One**: The trial court denied petitioner's constitutional right to present a defense by excluding relevant evidence.
>
> **Supporting Facts:** The trial court excluded statements by Makenah Grabans relevant to the origin of A.G. 's injuries and her own veracity. The trial court abused its discretion when it excluded text messages from Makenah Grabans to Petitioner. The statements contained in the messages provided an alternate theory of the offense, namely that Grabans was the source of some of the injuries to A.G., and were proper impeachment evidence. The messages not only give a timeline as to when the injuries occurred but the source of said injuries. Messages like "i literally cry all the-time be I'm so tired of having a baby." 8/3/2020 4;55;27 PM, "imma f***ing throw her against the f***ing wall if she doesn't shut the f** it.","  I feel like i'm a horrible mommy and the [A.G.] deserves someone better.*** someone that wouldn't hurt her be they were angry." 8/15/2020 1;58;19 AM, "i'm the worst mommy ever. I couldn't figure out how to fix her straps in her purple car seat the other day. So, I just tried to make them work, & then when I got her out when I got home, I felt her little head hit the handle." 8/19/2020 11 ;43.46 PM (Exhibit E). The importance of this evidence is clear given the state argued that Petitioner caused the bruises to A.G. on August 19th 2020. Upon Cross- examination, Grabans attempted to deny or explain away certain statements to petitioner regarding injuries to A.G. while in her care:

4

Q Do you remember telling Chuck that you really thought she just hit her head on the car seat?

A I probably did say that.

Q So it wasn't his suggestion. That's something that you had mentioned to him?

A He suggested it on the phone while we were talking on the phone. (TP) vol. III, p. 448

Q Have you ever accidentally hurt your daughter?

A No.

Q Do you remember telling Chuck that you did?

A No. *Id*., p. 449.

The quoted text messages sent on 8/19/2020 and 8/15/2020 were extrinsic evidence of a prior inconsistent statement that Grabans denied or attempted to explain on cross examination. Detective Lawson testified that there was no evidence that Makenah Grabans was responsible for any of the injuries to A.G (TP), Vol III, p. 563, 11. 15-19. The quoted text messages directly contradict Lawson[']s testimony and were therefore an appropriate avenue of inquiry in cross-examination. The text messages from Grabans to petitioner were capable of authentication by Detective Lawson. The above messages are only a few of the many messages that were relevant, fell under an exception to the hearsay rule, and/or were admissible as prior inconsistent statements. Grabans testimony was significant in establishing the time of injury for the state's theory of the offense. Her messages, both as substantive evidence and for impeachment, were critical defense evidence.  Also included within the messages between the petitioner and Makenah Grabans was a statement from Petitioner stating "I'll take the blame for you" 8/20/2020 11 :05 PM (Exhibit E), which could have been used to contradict the audio and video confession, and statement he made to police at the time of his interrogation which the State relied so heavily upon to form a timeline for the injuries. Through out the petitioners entire court proceedings, multiple request for discovery were made. The state claimed to have turned over the documents containing the messages listed above to petitioners retained counsel more than a year before trial which is simply not true. The state turned over a flash drive containing various items including cell phone examinations and cell phone pies/texts (from the mothers phone), none of which contained

5

the exculplatory [sic] evidence disclosed to petitioner during the May 16th court hearing. The petitioner not only relied on his retained attorney but relied on the prosecution to provide him with the messages being that he had no access to his phone. The State failed to turn over the exculplatory eveidence [sic] he needed for his defense and the petitioners then retained counsel failed to request it forcing the petitioner to act prose and make multiple discovery request in attempts to obtain it. The state turned over multiple copys [sic of what they deemed full discovery, it wasn't until after the petitioner went through the discovery provided on February 15th 2022 that he realized that not only his phone, confiscated by the investigating detective, but the messages within were not included. The petitioner believed that not only the state but his then standby counsel had not provided him with all the discovery, being that his phone was not included within. On May 9th, 2022, the petitioner made a specific request for his phone that contained the messages, the state noted that it intended not to introduce the phone as evidence Pre-Trial Tr. 2 at 15-16. It wasn't until May 16th, 2022, that the petitioner received five-thousand pages worth of messages extracted from his phone that was in the custody of the police department that conducted the investigation Id at 536-537. With the sheer volume of the new discovery that was untimely disclosed to the petitioner, six days before trial is absolutely not enough :tme to sift through, locate any and all exculpatory evidence then set up a proper defense. The Petitioners then stand by counsel was also provided with a full copy of any and all discovery including the messages he received on May 16th and asserted that he was ready for trial if the petitioner decided to let him take over. The messages are material to the petitioners innocence or guilt, in a way that they provide an alternative theory as to who caused the injuries to A.G, and could have been used to impeach star witnesses presented by the state. The state was well aware of these messages months before trial and had a duty to tum them over upon discovery of the materiality of said messages regardless if the petitioner made a vauge [sic], specific, or no request at all. Even if the police department that held the phone failed to tum it over to the state, they still have a duty to disclose evidence that extends to information in possession of the law enforcement agency investigating the offense. Had the state turned over the messages in a timely manner the petitioner could have then provided the messages to his then trial counsel before trial commensed [sic]. The petitioners actions were purely to protect his due process rights and any procedural default was not a cause of the petitioners "strategic", "tactical", oi- "sandbagging" choices. The petitioner acted diligently in trying to secure the messages in time for their affective use at trial but due to the prosecutors actions he was denied his righ[t] to a fair trial.

6

**Ground Two**: The trial court violated petitioner's due process in violation of his rights by denying his motion for funds to obtain a false confessions expert at state expense.

**Supporting Facts:** Petitioner moved for appointment of a confessions expert to investigate Petitioner's interrogation and reenactments. Therein Petitioner's counsel represented to the court that in their professional opinion, the aid of a confessions expert was necessary to adequately represent the Petitioner. The trial court denied the motion, finding Petitioner "failed to make a particularized showing required in order to be entitled to an expert pointed [sic] by the court. Petitioner's recorded interview and the video of the reenactments was played for the jury. Likewise, Petitioner's written statement was read to the jury. There were multiple messages from the evidence excluded that would have shown multiple contradictions in the statement and recorded interview giyen by the petitioner. The messages also show a reasonable probability for the petitioner making a false confession. Messages from Makenah Grabans to petitioner could have easily been used to make a particularized showing for an expert, messages such as "im scared" "im going to jail" and a statement made by the petitioner stating "ill take the blame for you" (Exhibit E) would have been crucial in proving a motive for the petitioner making a false comnfession [sic]. Given the Petitioner's statement were a major part of a largely circumstantial case, Petitioner demonstrated a "reasonable probability" that the requested confessions expert "would aid in his defense".

**Ground Three**:  The trial court erred in overruling the petitioner's motion to suppress.

**Supporting Facts:** Petitioner's motion to suppress argued that his statements were involuntary and his waiver of *Miranda* rights was not knowing, intelligent, and voluntary. Petitioner was induced by law enforcement to provide some explanation for the injuries sustained by A.G., in order to potentially aid in the medical treatment to save her life. Petitioner was a young man, barely over eighteen years of age, wholly inexperienced with law enforcement, who was emotionally distraught. Law enforcement deliberately used appeals to provide help for A.G. in order to take advantage of Petitioner's emotional state. Petitioner had been in contact with Makenah Grabans before the detectives arrived at his house in which Grabans stated multiple times that she was "scared" and that she was "going to jail". Included in the conversation between the two is a statement from petitioner that reads "ill take the blame for you"

7

which any reasonable person could had inferred was true being that he understood that the mother knew more about the injuries and who had caused them than he did. During the interrogation it is clear that the petitioner is distressed. It was also clear that petitioner knew little about the injuries being that he fabricated multiple stories as to how the injuries were caused when trying to explain them during the interview. The petitioner was deeply attached to A.G. and the mother at the time and out of deep concern for A.G. and profound love for the mother the petitioner made-up storys and admitted guilt to the injuries of A.G. The trial courts finding that the Petitioner's statements were voluntary, and its decision overruling the motion to suppress, were in error.

**Ground Four**: Petitioner's convictions are not supported by the sufficient evidence to prove guilt beyond a reasonable doubt and are against the manifest weight of evidence.

**Supporting Facts:** The state failed to meet its burden of producing sufficient evidence to establish the elements of the charged offense beyond a reasonable doubt. Castiglione-Richmond testified that the injuries were numerous, whereas Thackeray was ultimately unable to opine on the number of injuries occurring on August 20th, 2020. Second, the experts could not identify the mechanism of the injury. Castiglione-Richmond could not identify the mechanism of the injury beyond terming it blunt force trauma. Thackeray opined that the injuries which A.G. displayed were consistent with child abuse, but also consistent with a "severe highly traumatic accident". Lastly, Castiglione-Richmond testified that Petitioners explanation of an accident, where he was spinning with the child and accidentally hit the childs head on a door frame, could have cause the injuries to A.G. The testimony of the States' experts revealed a number of contradictions regarding the number of injuries to A.G. and the causation thereof. The state relies heabily [sic] upon the statement made by petitioner to establish a timeframe and source of injuries to A.G on August 19th 2020 and August 20th 2020. The evidence that was exclude from trial argued in Ground One provided an alternative theory as to who caused the injuries to A.G. and that the petitioner was simply taking the blame for the mother. There were also statements made by the step father of Makenah Grabans that contradicts the petitioners claim that he injured A.G. on the night of August 19th 2020.When the evidence and all the reasonable inferences are weighed, and witness credibility is considered, it should be determined that the trier of fact clearly lost its way and created a manifest miscarriage of justice. Petitioners conviction must be reversed and Petitioner discharged.

8

**Ground Five**: The trial court erred in charging the jury with a definition of recklessly which was an incorrect statement of law.

**Supporting Facts:** The trial court Instructed the jury with a prior, incorrect definition of recklessly. The Jury was instructed in such a manner as to find the element of "recklessly" on the basis of a lower standard than required by law. Therefore the likelihood of the instructions potentially affecting the outcome of the trial rises above the threshold of a reasonable probability. Moreover the resulting prejudice is clear: a conviction in the absence of all necessary elements. Due to the incorrect definition of recklessly provided to the jury, the jury instructions contained a definition of both "risk" and "substantial risk". The inclusion of the lesser standard was unnecessary and confusing. Its presence in the jury instructions calls into question the jurys finding of serious physical harm on the felonious assault count and therefore the entire verdict. Petitioners convictions on all counts must be reversed and this matter remanded.

**Ground Six**: The trial court erred by convicting petitioner of allied offenses of similar import.

**Supporting Facts:** The state acknowledged that Counts 1 through 5 merged but argued that Count 6 did not due to a separate animus. The court found a separate animus for Count 6 based upon bruises A.G. exhibited on the night of August 19, 2020. However, Petitioners conviction on Count 6, Endangering children, required a finding of serious physical harm. There was no evidence in the record of serious physical harm occurring on August 19, 2020. The record demonstrates that Petitioner convictions on Count 1 and 6 had to have been based on the events of August 20th, 2020. The offenses were therefore committed by the same conduct, with the same animus, resulting in the same harm. The convictions are allied offenses of similar import and should have merged for purposes of sentencing. Petitioners convictions should therefore be reversed and the matter remanded.

**Ground Seven**: The trial court erred in finding the petitioner made a knowing, intelligent, and voluntary waiver of his right to the assistance of counsel.

**Supporting Facts:** The colloquy between the trial court and appellant throughout the hearing on the matter of self-representation were not sufficient to find a knowing, intelligent, and voluntary waiver of appellants right to counsel. Even if the waiver was voluntary, the lack of understanding, the absence of any meaningful

9

responses to questions, and the irrational content of the written and oral motions, demonstrates a lack of competence to waive counsel. The court itself questioned whether the waiver was knowing and intelligent, and scheduled repeated hearings as a result. The colloquy with the trial court demonstrated that Petitioner lacked the competence to make a knowing and intelligent waiver. The trial courts findings otherwise was in error.

**Ground Eight**: Petitioner was prejudiced by the denial of his right to effective assistance of counsel, in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

**Supporting Facts:** The performance of Petitioners trial counsel was deficient in at least four respects. First, trial counsel failed to argue for examination of the text messages individually, resulting in the erroneous exclusion thereof, as argued in Ground One. Second, trial counsel failed to subpoena Makenah Grabans to be recalled or to call another witness who could have laid foundation for the text messages. Third, petitioners counsel should have been aware of the contents being that the phone data had been provided in digital form and the messages in paper form as part of discovery. Even though the petitioner was pro se at the time he received the messages, a copy was also forwarded to the petitioners then standby counsel. Lastly, counsel failed to object to the incorrect statement of law in the jury instructions, as discussed in ground 5, which resulted in a lesser burden on the state and confusing the jury instructions. The above deficiencies in the performance of Petitioners trial counsel resilt4ed in the representation falling below and objective standard of reasonableness and prejudice to petitioner. First, the text messages provided an alternate theory of the source of injuries to A.G., as well as ideal tools of impeachment. Second, the failure to object standard of reasonableness, and the deficient performance of petitioner's trial counsel prejudiced him. Petitioner's conviction must therefore be reversed.

**Ground Nine**: The cumulative effect of the errors set forth herein deprived petitioner of his constitutional right to a fair trial.

**Supporting Facts:** The cumulative effects of the errors set forth above deprive the Petitioner of his right to a fair trial. The cumulative effect of the errors excluding competent, relevant evidence at trial resulted in a denial of petitioners right to a fair trial. Petitioners conviction should be reversed and this matter remanded.

(Petition, ECF No. 1).

10

Respondent asserts merit review of these claims is barred by the statute of limitations enacted by Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA").  That statute is now codified at 28 U.S.C. § 2244(d) which provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Item 18 of the standard form for § 2254 petitions instructs the petitioner: "If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition."  Although he copied this language from the standard form, Petitioner made no response to the question (Petition, ECF No. 1, PageID 20).  Thus he made no claim of late discovery of the factual predicate or applicability

of a newly-recognized constitutional right or any State impediment to filing.  The statute then began to run on the date the conviction became final on direct review, which was October 30, 2023, the last day on which Pulley could have filed a timely appeal from the Second District's affirmance (Opinion, State Court Record, ECF No. 7, Ex. 26).  That statute then ran for 125 days until it was tolled under 28 U.S.C. § 2244(d)(2) by Petitioner's Motion for Leave to File a Delayed Appeal on March 4, 2024. *Id.* at Ex. 27.  It continued to be tolled until the Ohio Supreme Court denied that Motion on April 30, 2024. *Id.* at Ex. 28.  Pulley filed his Petition 363 days later on April 28, 2024.

Pulley apparently calculated his statutory expiration date based on a belief that his collateral attack re-started the statute, but it does not.  A properly filed collateral attack on a judgment tolls the statute of limitations, but does not re-start it.  *Payton v. Brigano,* 256 F.3d 405, 408 (6th Cir. 2001); *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001).

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice as barred by the statute of limitations.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

March 11, 2026.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #